ILLINOIS CENTRAL RAILROAD COMPANY *v*. HASSIE A. CAUSEY ET AL.

[63 South. 336.]

1. RAILROADS. *Death. Excessive damages. Code* 1906, *section* 4047. *Backing train or engine. Passenger depot.*

Where a man twenty-eight years of age, in robust health and earning $100 per month was killed by the negligent operation of a railroad train and suit was brought for his death by his wife and their children, aged respectively six years, two years and six months, a verdict for twenty thousand dollars was not excessive.

2. RAILROADS. *Operation. Backing trains or engine. Passenger depot. Code* 1906, *section* 4047.

Under Code 1906, section 4047 providing that it shall be unlawful to back a train or engine into or along a passenger depot or within fifty feet thereof, at more than three miles an hour, without warning, and providing for damages for every injury inflicted, etc., the words "passenger depot" as used in the statute include in their meaning not only the building at the railroad company's station, but also all passageways, walkways, or platforms prepared for the benefit of passengers, and used by them in boarding and getting off trains. So that where a backing engine killed one opposite a platform so used, extending from the depot building along the track for 181 feet, the railroad company was liable.

3. SAME.

A place may be a railroad passenger depot although there is no building at the railroad's stopping place, but only platforms and passageways for passengers to get on and off the cars.

4. RAILROADS.  *Operation.  Backing  trains.  Code*  1906, *section*  4047.
   Section 4047, Code 1906, regulating the backing of railroad trains
   along passenger depots, was intended to preserve and protect
   human life and limb, and should be given full scope, in accord-
   ance with its plain meaning, not restricted by strained inter-
   pretation.

APPEAL from the circuit court of Holmes county.

HON. MONROE McCLURG, Judge.

Suit by Mrs. Hassie A. Causey and others against the
Illinois Central Railroad Company.  From a judgment
for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

The record in this case, although it presents an im-
portant issue, is really not very complicated, and the
points for discussion are but few.

The appellee has filed a brief in the case in which the
position is taken that there is a clear liability upon the
railroad company because of the alleged violation of sec-
tions 1985 and 4047 of the Code.

We will consider section 4047 in the first place; and
we submit that that section has no relation to this case
whatever, and the application of it to the case by his
honor below was a clear and fatal error and for that
reason this case should be reversed.

It is the section which the court, of course, knows pro-
vides that in all cases where an engine or cars are backed
along a depot and on a track lying within fifty feet of
the depot, it must be preceded by a man on foot to give
warning, etc.

We make no point or controversy but what the pass-
ing track on which this killing occurred is such a track
as the statute described.  It was only thirty-six feet
from the depot to the passing track at the nearest point.

Neither do we make any point that there is any doubt
about the fact that the engine and tender were backing

on this passing track and should have been preceded by the man on foot, and was not. But the clear error on the part of the court and the fatal error for which this case must be reversed, consists in the fact that the undisputed and indisputable evidence shows that the man was not killed while the statute was being violated. He was not run over within the range of measurements intended by the statute to be protected by the same.

It is clear and is conceded, that when this man was struck he was one hundred and eighty-one feet north of the northeast corner of the depot. Let the court note, one hundred and eighty-one feet north of the depot.

Now, what does this statute provide? Its terms are perfectly clear. There is no room for misunderstanding; its terms are so clear and explicit that there is even no room for controversy about what it means.

Its provisions are, first, that this runner must be in front of the backing cars while passing the depot; and, secondly, that "for at least three hundred feet before it reaches or comes opposite to such depot, shall be preceded by a servant of the railroad company on foot, not exceeding forty nor under twenty feet in advance to give warning. For every injury inflicted by a railroad company while violating this section, the party injured may recover," etc.

Therefore, if cars are about to be backed along a track within fifty feet of the depot, from a point three hundred feet distant while approaching the depot, they must be preceded by this rumor. But the statute does not require that after the train shall have passed by the depot, it shall be preceded by any runner whatever, and this train had passed by one hundred and eighty feet.

The statute does not say nor mean that this runner must remain on service for three hundred feet beyond the depot. The language of it is too clear for argument. The requirement of the statute is exhausted when the far end of the depot is passed; certainly when it is passed

by the space of fifty feet. The three hundred feet rule has no application to that situation whatever.

It is true that this is a statute, as this court held in the *Metcalf case*, in 84 Miss., intended for the protection of life and limb, etc., and must be construed with a view to that result. But there is no room for construction here; the terms of the statute are explicit; the statute is not one which, in general terms, devolves upon the railway company a general obligation to be diligent, but it is one which is definite and specific; it provides by express terms, within the limits of a foot, where and when that thing must be done.

First, that in passing by the depot within fifty feet this man must run in advance; secondly, in approaching the depot for that purpose, three hundred feet away he must begin to run; but there is not one word in the statute which says he shall continue to run after the advance end of the backing train has passed the depot by the space of fifty feet.

It is impossible to make the expression in the statute which is before it reaches or comes opposite to such depot, to be equivalent to or include, the other notion of three hundred feet after it reaches or has passed by the depot.

They import wholly different notions. Therefore, Mr. Causey not having been struck by the train while it was running along the depot and on a track within fifty feet thereof, and not having been struck while it was approaching the depot and within three hundred feet of the depot, on such a track, is not within the prescribed limits of the statute, and that statute had nothing whatever to do with this case.

Even if it be considered that the statute applies so long as any part of the backing train is opposite to the depot building (which we do not consider to be the true construction of the statute, however), yet in this particular instance, even with that construction, it would not

apply. This for the reason that this man was struck one hundred and eighty-one feet north of the corner of the depot building, and at that time the pilot of the engine had passed the corner of the depot building by the difference between one hundred and eighty-one feet and fifty-five feet, which was the length of the engine and tender; that is to say, the pilot of the engine backing out passed the corner of the depot building about one-hundred and twenty-five feet, and, therefore, no part of the backing cars was less than about one hundred and twenty-five feet north of the depot building. The whole concern had passed even beyond the fifty-foot limit by seventy to seventy-five feet.

It will be seen that in the third instruction for the plaintiff the court submits the case on that proposition. This was a fatal error, the statute having no application to the case whatever. This instruction was evidently prepared with the statute before the eye of the writer, and so far as its terms are concerned, it is correctly expressed as a legal proposition; that is to say, the statute is correctly quoted. But the fatal error consists in the fact that the instruction was given at all, it not being applicable to the facts of the case, as the plaintiff herself showed those facts to exist.

*Hill & McBee,* for appellees.

This is a case appealed from the circuit court of Holmes county where a verdict was rendered for the appellees at the March term, 1912, in the sum of twenty thousand dollars for death of one J. D. Causey, who was the husband of one of the appellees and the father of minor appellees. Mr. Causey, at the time of his death, was a young man about twenty-eight years old, and was employed as night policeman by the town of Durant, Mississippi, and further employed by the Illinois Central Railroad to watch its property and protect same from all depredations. He was strong and healthy and earn-

ing one hundred dollars a month making a good support
for his wife and infant children. He was killed at night
and beyond question was killed by the running of appel-
lant's locomotive engine, as he was discovered under
the tender of a locomotive that had evidently backed over
him, and he was extricated from this place with some
difficulty. The injury undoubtedly occurred within fifty
feet of the passenger depot, and according to all the
testimony in this case, the engine was not "preceded by
servant of the railroad company on foot not exceeding
forty feet nor under twenty feet in advance to give warn-
ing." Section 4047 was clearly violated. The speed of
this engine may not have been in excess of "three miles
an hour," but the other provision of the section was
clearly violated as proved by everyone who testified on
this subject, and it is the latter provision of the section
that gives greater security to individuals and certainly
this provision of the Code is not complied with unless
there is a servant of the defendant going on foot in ad-
vance of the backing engine to give warning as the stat-
ute provides. The case was submitted to the jury on
this count and another one and under the law and the
evidence in this case, there was nothing for the jury to
consider but the amount of damages, as both sections of
the Code of 1906, to wit, 1985 and 4047, had been clearly
violated. The latter section has been several times con-
strued by this court and we cite the familiar cases in
76 Miss 360, 77 Miss. 511, 36 So. Rep. 259 (84 Miss. 242).

*H. H. Elmore,* for appellees.

Appellant's construction of this plain and explicit stat-
ute is at war with the construction of the same by the
court in *Y. & M. V. R. R. Co.* v. *Metcalfe,* 84 Miss. 242.
In that case the court considered the purpose and design
of the statute, its plain terms and the manifest legisla-
tive intent.

Appellees relied on that construction in bringing this
action; and all the more so, because the decision was

rendered in 1904, was officially reported and published in 1905 by the supreme court reporter, and the statute was brought forward and reinstated by the Code of 1906, word for word, as it was in the Code of 1892, the re-enactment as appellees contend carrying with it the pre-vious construction.

Where a statute of the Code of 1880, which had been construed by the supreme court, was on a codification of the laws re-enacted in the Code of 1892, the construction given the section, while part of the Code of 1880, con-trolled the construction of the statute when a part of the Code of 1892. *Wetherbee* v. *Roots,* 72 Miss. 355.

"This court uniformly refuses to overrule a decision settling the construction of a statute where after the deci-sion, the statute has been re-enacted." *Shotwell* v. *Cov-ington,* 69 Miss. 735.

The Metcalfe case is annotated to section 4047, the an-notations announcing that the statute "affords protection to all persons injured by a backing train within three hundred feet of a passenger depot" and that "the per-sons within fifty feet thereof" refers to the distance from the depot to the nearest point of the track on which the train is backing.

It is respectfully submitted that these annotations show that the statute was re-enacted in full view of and in accordance with the Metcalfe case; that the annotations are as much legislative as the words of the section it-self; and that the construction of that section as ex-pressed in those annotations and that case was enacted with that section by the legislature when the section was adopted followed by the annotations themselves.

*J. D. Guyton,* for appellees.

Section 4047 of the Code of 1906 is as follows: "It shall be unlawful to back a train of cars, or part of a train, or an engine into or along a passenger depot at a greater rate of speed than three miles an hour; and

every such train, part of a train, or engine backing into or along a passenger depot, and within fifty feet thereof, shall, for at least three hundred feet before it reaches or comes opposite to such depot, be preceded by a servant of the railroad company on foot, not exceeding forty nor under twenty feet in advance, to give warning. For every injury inflicted by a railroad company while violating this section, the party injured may recover full damages without regard to mere contributory negligence.''

It is clearly shown by the testimony of Rivers, Garrett, and Brooks, and is admitted by counsel for appellant, that the engine that ran over Causey ran over him while it was backing up the passenger track which runs within fifty feet of the depot and without a ''servant on foot . . . in advance to give warning,'' and that Causey was killed by this engine while so backing within three hundred feet of the depot; but counsel contend that this law does not require a ''servant on foot,'' etc., after the engine has wholly passed the depot.

If counsel's contention be correct in this, the question as to whether or not a person injured while on the track at any point three hundred feet or less from the depot would be under the protection of this statute, would depend entirely on the direction the engine or train was at the time backing. And in the case at bar, according to counsel's contention, Causey would have been under the protection of this statute, had the engine that ran over him been backing south, but was not under its protection simply because it was backing north. This construction would give one end of the depot protection and give the other end of the depot no protection whatever; and as to which end in any case would be protected by this statute would depend entirely on which direction the train or engine was at the time backing.

It is true that this statute does not in definite terms say at what point the servant on foot may be dispensed with, and this court is now called upon to fix this point.

I submit that the language of the statute, "shall for at least three hundred feet before it reaches or comes opposite to such depot," merely designates the point where it is required that a servant of the railroad company shall begin to go on foot and in advance to give warning, and does not definitely say where such servant may cease to go on foot. But it was evidently intended by this statute to protect all persons injured within three hundred feet of the depot on a track that runs within fifty feet thereof by a backing engine, without regard to whether the engine or train was, at the time of the injury, approaching the depot or receding from it.

This court, in the case of *R. R. Co.* v. *Metcalfe,* 84 Miss. 242, construing this section of law, says: "After careful consideration we are of the opinion that section 3549, Code 1892 (section 4047, Code 1906), was intended for the protection of all persons injured within three hundred feet of a passenger depot, where the injury was caused by a backing train, part of a train, or engine, on a track which passes into or along a passenger depot within fifty feet thereof, and was designed to discourage the reckless practice of backing trains without warning on premises generally frequented by numerous persons, by imposing liability on railroad companies for all infractions of the rule thereby established, and allowing all persons injured to recover full damages without reference to mere contributory negligence. No other construction, in our judgment, will effectually harmonize the several provisions of this section."

From this authority, it is plain that Causey was within the range of measurement intended to be protected by the statute at the time he was run over and killed by the backing engine, and that the construction given by the counsel for appellant is too narrow in its scope to carry out the evident design and intendment of the statute.

But if this court should agree with counsel for appellant in construing this section, then I submit that the

backing engine had not in fact passed the "depot" at the time Causey was killed, but that Causey was killed by the engine while it was backing along and beside the "depot."

This contention of fact is based entirely on the meaning of the word "depot" as used in the statute.

The word "depot" is defined in Cyc. as follows: " 'Depot' means, in railroad law, 'a railroad station;' a place where passengers get on and off the cars, and where goods are loaded and unloaded; the entire grounds used by the company for its business purposes with the public at the station," etc.   13 Cyc. 1041-1042.

And I refer especially to note 13 on page 1042, where the case of *Galveston, etc., R. R. Co. v. Thornsberry* is quoted, (17 S. W. 521): "The term 'depot' is sufficiently broad to embrace within its meaning a 'passway' used for the convenient and safe egress and ingress of passengers. It is not restricted in its significance to the 'house' or structure used also for their convenience in this respect."   13 Cyc. 1042, note 13.

The brick walk in the case at bar was designed by appellant as a place to deposit and take on passengers. It is a place manifestly that is much frequented by many people, and was intended by appellant to be such a place. It is a part of the appellant's general plan designed to accommodate its passenger traffic at Durant.

It was the design of the statute in question to protect just such places as this from the "reckless practice of backing trains without warning." *R. R. Co. v. Metcalfe,* supra.

Argued orally by *E. F. Noel* and *Edward Mayes,* for appellant, and *R. C. McBee,* for appellees.

REED, J., delivered the opinion of the court.

J. D. Causey was run over by a backing locomotive and tender on a track of the Illinois Central Railroad Company at the depot in Durant, Mississippi, during the

night of February 26, 1911. Nobody saw the occurrence. The engineer testified that he was in the cab and ringing his bell, and the fireman was on the rear end of the tank; that he heard the brake beams of the wheel hit the tank, and directed the fireman to look under the tank, and there Mr. Causey was found. Mr. Causey was then dead, and his body had apparently been.dragged some thirty or forty feet. At the time of the occurrence the locomotive and tender were not being preceded by a servant of the railroad company on foot. The farthest pool of blood north, where it appears that deceased was knocked down, was one hundred and eighty-one feet from the northeast corner of the building at the depot, and the point where the body was found was about one hundred and forty feet from the building.

There is a brick platform, or walkway, used by passengers in boarding and getting off trains running from the depot building along the main track a distance of more than one hundred and eighty-one feet, and beyond the point of the farthest pool of blood north.

Mr. Causey was employed as night policeman by the town of Durant, and was also employed by the Illinois Central Railroad Company as a watchman. When he was killed he was assisting two men from an adjoining county to apprehend a man charged with a crime who was expected to reach Durant on passenger train No. 5, which arrived about 1:30 o'clock at night. Train No. 5 was on the main track when he was killed. The locomotive and tender were backing on a passing track which was next to the main track, and extended along and within a distance of fifty feet of the depot.

At the time Mr. Causey was killed he was twenty-eight years of age, in robust health, and was earning one hundred dollars per month. He left surviving him a widow and three children, aged, respectively, six years, two years, and six months. His widow and children brought suit against the railroad company for his death, and re-

covered a judgment for twenty thousand dollars. Considering his early age, his long expectancy of life, his strong health, and his earning capacity, we do not think the verdict is excessive.

We do not find any reversible error in this case; but we deem it proper to notice one of the points argued by appellant's counsel.

One of the counts in the declaration filed by appellees is based upon the negligence of appellant arising from its failure to have a servant precede the backing locomotive and tender, as required by section 4047 of the Code of 1906. That statute reads as follows: "It shall be unlawful to back a train of cars, or part of a train, or an engine into or along a passenger depot at a greater rate of speed than three miles an hour, and every such train, part of a train, or engine backing into or along a passenger depot, and within fifty feet thereof, shall, for at least three hundred feet before it reaches or comes opposite to such depot, be preceded by a servant of the railroad company on foot, not exceeding forty nor under twenty feet in advance, to give warning. For every injury inflicted by a railroad company while violating this section, the party injured may recover full damages without regard to mere contributory negligence."

Counsel for appellant concede that the statute was violated, but contend that Mr. Causey was not killed while it was being violated; that "he was not run over within the range of measurements intended by the statute to be protected by the same;" that the locomotive and tender passed by the depot a distance, in fact, of one hundred and eighty-one feet; that after passing the depot it was not necessary for them to be preceded by a servant of the railroad company on foot.

Counsel say, in their brief, that: "The requirement of the statute is exhausted when the far end of the depot is passed; certainly when it is passed by fifty feet." They further say: "Its provisions are, first, that this

runner must be in front of the backing cars while passing the depot, and, secondly, that for at least three hundred feet before it reaches or comes opposite to such depot shall be preceded by a servant of the railroad company on foot, not exceeding forty nor under twenty feet in advance, to give warning."

Now, we gather from counsels' argument that they construe the passenger depot mentioned in the statute to be only the building used by the railroad company at its station or stopping place. We cannot agree with counsel in their definition of passenger depot. Depot is defined by Mr. Black, in his dictionary, to be "a place on the line of a railroad where passengers may enter and leave the trains, and where freight is deposited for delivery."

We take the following from 13 Cyc. 1041, as a definition of depot: "A place where passengers get on and off the cars, and where goods are loaded and unloaded. . . . The entire grounds used by the company for its business purposes with the public at that station."

In the case of *Pitts., Ft. W. & Chicago Ry. Co.* v. *Rose et al.*, 24 Ohio St. 229, the court, in defining what was meant by "the depot," said: "Clearly, the words 'the depot' mean the entire grounds used by the company for its business purposes with the public at that station."

In *Galveston, H. & S. A. Ry. Co.* v. *Thornsberry* (Tex.), 17 S. W. 521, it is said: "The term 'depot' is sufficiently broad to embrace within its meaning a 'passway' used for the convenient and safe egress and ingress of passengers. It is not restricted in its signification to the 'house' or structure used also for their convenience in this respect. It means a 'railway station.' Webst. Dict. This could include the surrounding grounds, a 'walk' leading from the building or house affording shelter to passengers to the cars, and other approaches thereto. That these are embraced within the term 'depot' is evidenced by the numerous cases in which it is declared to

be 'settled law that railroad companies are bound to keep in a safe condition all portions of their platforms and approaches to the same, as well as the grounds reasonably near thereto, where passengers would naturally go who are seeking to take passage on or are leaving their cars.' "

The court, in the case of *Hill & Morris* v. *St. L. & S. W. Ry. Co. of Texas,* 75 S. W. 876, referring to the meaning of the term "depot," said: "The dictionaries give as one of the definitions of the word 'depot' a 'railroad station,' and it seems to us, keeping in view the evil which it was the purpose of the legislature to remedy, that the language 'warehouses or depots,' in the connection in which it is used in this statute, was intended to embrace the entire station of the railroad, including platforms used for handling cotton. This construction is supported by authority."

In the case of *State* v. *Indiana & Illinois Southern R. R. Co.,* 133 Ind. 69, 32 N. E. 817, 18 L. R. A. 502, it is said, in the opinion, that: "By 'passenger depot' was not meant merely the station house built for the accommodation of passengers, but the grounds prepared and used as depot grounds for the benefit of persons traveling upon the particular railroad, and used by the company at such point in operating it as a common carrier of passengers." It was decided in this case that it was a question of fact as to what constituted a passenger depot at a particular place.

We are convinced that the words "passenger depot" as used in the statute include in their meaning not only the building at the railroad company's station, but also all passageways, walkways, or platforms prepared for the benefit of passengers, and used by them in boarding and getting off trains.

If we are to confine the meaning to only "building," then, if there was no building at the railroad's stopping place, but only platforms and passageways, etc., such

106 Miss. 4

50        Ill. Cent. R. R. Co. *v.* Causey.        [Sup. Ct.

Opinion of the court.                    [106 Miss.

place for passengers to get on and off cars, though used by a number of persons, could not be called a depot.

We must give a reasonable construction to the statute. It was said, in the case of *Railroad Co.* v. *Metcalf*, 84 Miss. 251, 36 South. 261, by Judge Truly, in delivering the opinion of the court, and referring to the statute (section 4047), that: "The regulation is a wise one, intended to preserve and protect human life and limb, and should be given full scope, in accordance with its plain meaning, not restricted by strained interpretation." And he further said that the law "was designed to discourage the reckless practice of backing trains without warning on premises generally frequented by numerous persons by imposing liability on railroad companies for all infractions of the rule thereby established, and allowing all persons injured to recover full damages without reference to mere contributory negligence."

We think that the brick passageway or platform along the main track, extending beyond the point where it seems to be conceded that Mr. Causey was struck, and used by passengers in entering and leaving trains of the Illinois Central Railroad Company, was a part of the passenger depot at Durant, Miss. The locomotive and tender were backing along the passenger depot, therefore, when it struck Mr. Causey.

*Affirmed.*