ILLINOIS CENT. R. CO. *et al. v.* ARCHER.

[74 South. 135.]

1. INTERSTATE COMMERCE. *Railroads. Nature of employment.*

A railroad carpenter who was killed by a train as he attempted to cross the track to purchase a newspaper, was not then engaged in interstate commerce and an action for his death was not governed by the provisions of the Federal Employers Liability Act of April 22, 1908; chapter 49, 35 Stat. 65, U. S. Comp. St. 1913, sections 8657-8665.

2. MASTER AND SERVANT. *Operation of railroads. Mode of backing trains. Part of train. Statute.*

Section 4047, Code 1906, imposes two separate and distinct duties upon railroads. (A) Not to back cars or engines into or along a passenger depot at a greater rate of speed than three miles an hour; and (B) to cause a train of cars, or part thereof; or an engine backing at any rate of speed into or along a passenger depot, upon a track passing within fifty feet thereof, for at least three hundred feet before it reaches or comes opposite thereto, to be preceded by a servant on foot, not exceeding forty nor under twenty feet in advance, to give warning.

3. SAME.

Where deceased was killed near a passenger depot by a backing train shoving an oil car against a coal car as he passed between the latter and a box car, the coal car was "part of train" within the meaning of section 4047, Code 1906, which section since the enactment of chapter 194, Laws 1908, protects railroad employees as well as other persons.

4. OPERATION OF RAILROADS. *Mode of backing train. "Depot."*

Where a brick walk from end to end was intended for the use of passengers entering and leaving trains, the whole of it was a part of the railroad company's passenger depot.

5. OPERATION OF RAILROADS. *Mode of backing trains.*

The fact that the car which killed the deceased was not backed more than four or five feet, and that probably it could not have been backed more than that distance before striking another car, did not relieve the railroad company from the duty of having it preceded by a servant to give warning as required by section 4047, Code 1906.

6. SAME.

In such case although decedent was guilty of contributory negligence, a peremptory instruction should have been given against the railroad company in view of Laws 1910, chapter 135, abolishing the defense of contributory negligence.

7. MASTER AND SERVANT. *Injury to person on railroad tracks. Servant's liability.*

The servant of a railroad company in charge of a train which is being backed in violation of section 4047, Code 1906, are themselves as well as the company, responsible for any damages caused thereby.

8. MASTER AND SERVANT. *Injury from backing train. Servant's liability.*

Where the conductor was in charge of a train being backed in violation of Code 1906, section 4047, and which caused decedent's death, such conductor was liable, but the engineer who merely obeyed his signals, without knowlodge that the statute was being violated, was not liable.

9. NEGLIGENCE. *Comparative negligence. Instruction.*

An instruction that the contributory negligence of deceased was no bar to a recovery for his death was not erroneous, since such an instruction did not preclude the jury from diminishing damages "in proportion to the amount of negligence attributable to deceased, as provided by Law 1910, chapter 135.

10. INJURY TO EMPLOYEE. *Contributory negligence. Instruction.*

An instruction which told the jury that recovery could not be had where deceased should have known that a train was being backed, was improper, since chapter 135, Laws 1910, abolished the defense of contributory negligence.

APPEAL from the circuit court of Panola county.

HON. E. D. DINKINS, Judge.

Suit by Mrs. Jennie Archer against the Illinois Central Railroad Company and others. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Sivley & Evans* and *Mayes, Wells, May & Sanders,* for appellant.

*Wm. C. McLean,* for appellee.

SMITH, C. J., delivered the opinion of the court.

Robert Archer was struck and killed by one of the trains of the Illinois Central R. Co. on November 7, 1911, and this suit was instituted by the appellee, his widow, against the company and its conductor and engineer in charge of the train which killed him, to recover damages therefor. This appeal is from a judgment in the widow's favor.

Archer was a carpenter in the employ of the railroad company at the town of Durant. The railroad tracks at this place run north and south. The yards of the company extend some distance both north and south of its depot building. A street known as "Mulberry street" crosses the tracks at right angles immediately north of the depot, and another, known as "Madison street," crosses the tracks at the same angle some distance north of Mulberry street. Along the west side of and parellel with the main track of the railroad is a brick walk, which was constructed and is owned by the appellant company, beginning at the depot building and extending north four hundred and thirty-one feet to Madison street. East of the railroad tracks, and immediately south of Madison street, is located the company's carpenter shop, which is surrounded by a high board fence, the gate to which fence is ninety feet south of Madison street, and from which there is a walk parallel with the fence and tracks leading to Madison

street. Between the brick walk extending north from the
depot building and the fence surrounding the carpenter
shop there are three railroad tracks, the one nearest the
walk being the main line, the next being known as the
"passing track," and the third, which is eight feet from
the fence and within fifty feet from the brick walk, is used
for storing north-bound freight cars and the passenger
coaches of the Aberdeen Branch. On the west side of this
brick walk are two other tracks, one of which is parallel
therewith and on which the passenger train of the Tchula
Branch stands when receiving and discharging passen-
gers. This brick walk is used by passengers getting off
and on the main line and Tchula Branch trains. There
was evidence on behalf of appellants to the effect that,
although the longest south-bound main-line trains extend
the entire length of this brick walk, the furtherest point
north at which such trains are opened for receiving and
discharging passengers is two carlengths south of Madi-
son street. On the 7th day of November, 1911, there were
on the third track from the brick walk, the Aberdeen
train, an oil tank car, a coal car and a box car. The box car
was opposite the gate leading into the yard surrounding
the carpenter shop. The coal car was several feet south of
the box car and the tank car was south of, but, according
to the evidence for appellants, coupled to, the coal car;
and the Aberdeen train, which would shortly leave for
Aberdeen, was standing opposite the depot building. The
Standard Oil Company maintains an oil depot east of
the railroad tracks, just north of Mulberry street. The
conductor of the Aberdeen train was requested to back
up to the oil car and move it south to a point opposite
the oil spout, so that the oil therein could be transferred
to the tanks of the oil company. Archer on the day before
had been working on some timbers to be used in construct-
ing a depot of the railway at Malone, a station some dis-
tance north of Durant, which depot was used by the
company in aid of both its *inter* and *intra* state traffic.
On the morning in question he arrived at the shop some

time after six o'clock. His orders were to continue at work upon the timbers for the Malone depot, but before beginning the same, he cleared the shavings and debris from around his place of work and then stated to a fellow employee that he would go across to a south-bound passenger train, which had just then arrived, and get a newspaper. He left the yard through the gate opposite the tracks, walked south a few feet to the end of the box car, and attempted to pass between it and the coal car. The Aberdeen train, for the purpose of switching the tank car as herinbefore stated, was, at the time Archer attempted to cross, backing north along this track. According to appellant's evidence this train came practically to a stand just prior to coming in contact with the tank car, when the engineer on the signal of the conductor caused the wheels of the engine to make one backward revolution, thereby backing the train sixteen or seventeen feet, resulting in the tank and coal cars being backed four or five feet. Whether this backing train, after picking up the tank and coal cars, came in contact with the box car is not clear from the evidence, but if it did, the contact was very slight, and was insufficient to move it at all. Archer was struck by the coal car, knocked down, and killed. According to the evidence for appellants, the train, when it came in contact with the tank car, was moving at the rate of about one mile an hour, but according to that for appellee, it was moving at the rate of between three and four miles an hour. This backing was preceded by two servants of the railroad company, according to appellant's evidence until it came in contact with the tank car, but not thereafter. At the time Archer was killed both of these servants were south of the coal car, and neither of them saw, nor could have seen, him from where they were then standing. The point at which Archer was killed was three hundred and eighty-one feet north of the depot building, and, according to the evidence of the company's agent at Durant, about sixty feet south of the northermost point

where the doors of south-bound passenger trains were opened for receiving and discharging passengers.

One of the instructions granted appellee which is complained of by counsel for appellants is as follows:

"No. 10. Although the jury may believe from the evidence that Robert Archer was guilty of such conduct as proximately contributed to his injury and death, yet this is no bar to finding for the plaintiff."

By the only instruction granted appellants, the court charged the jury that:

"If they believe from the evidence in this case that Robert Archer walked from the shop, onto the track of defendant immediately north of the coal car and was knocked down and killed by it when it was backed up by the Aberdeen branch train coupling to the tank car, at a time when he knew, or by the reasonable use of his faculties could have seen, that the train was backing up they should find for the defendant."

In response to the various contentions of counsel for appellants, we will say that:

1. Archer was not empoyed in interstate commerce at the time he was killed. The cause, therefore, is not within the provisions of the Federal Employers' Liability Act.

2. Section 4047, Code of 1906, imposes two separate and distinct duties upon railroads: (a) Not to back cars or engines into or along a passenger depot at a greater rate of speed than three miles an hour; and (b) to cause a train of cars, part thereof, or an engine backing at any rate of speed into or along a passenger depot, upon a track passing within fifty feet thereof, for at least three hundred feet before it reaches or comes opposite thereto, to be preceded by a servant on foot, not exceeding forty nor under twenty feet in advance, to give warning.

3. The car which and when it struck Archer was a part of a train of cars within the meaning of section 4047, Code of 1906, which section since the enactment of chapter 194, Laws of 1908, protects railroad employees as well as other persons.

164    Illinois Cent. R. Co. *v.* Archer. [Sup. Ct.

Opinion of the court.                    [113 Miss.

4. The brick walk from end to end was intended for the use of passengers entering and leaving trains, consequently the whole of it is a part of appellant company's passenger depot (*Railroad Co.* v. *Causey,* 106 Miss. 36, 63 So. 336), so that Archer was struck and killed by a car which was then being backed along such depot.

5. The fact that the distance this car was backed may not have exceeded four or five feet, and that probably it could not have been backed more than that distance before striking another car, did not relieve appellant company from the duty of having it preceded by a servant to give warning; and, since it was not preceded by such a servant, it necessarily follows that appellee, because of our concurrent negligence statute (chapter 135, Laws of 1910), was entitled as against appellant company and its conductor, to an instruction peremptorily charging the jury to return a verdict in her favor. Consequently, excepting that numbered 10, any errors, if any there are, in the instructions granted by the court below to appellee were, as to the company and its conductor harmless.

6. The servants of a railroad company in charge of a train which is being backed in violation of section 4047 of the Code are themselves, as well as the company, responsible for any damages caused thereby. On the occasion in question the train was in charge of the conductor, who preceded it to the point of contact with the tank car. The backing was being done in response to his signals, and it does not appear—if the fact be material— that the engineer knew, or had cause to suspect, that obeying the conductor's signals would result in the train or a part thereof being backed without being preceded by a servant of the company on foot to give warning. Consequently, he did not participate in the violation of the statute, and it cannot be invoked against him.

7. The granting of appellee's instruction No. 10 was not an error, in so far as the appellant company and its conductor are concerned, for the reason that it did not preclude the jury from diminishing the damages "in

proportion to the amount of negligence attributable to''
Archer.   It is true that this instruction is in conflict with
the only instruction granted appellants, but they cannot
complain thereat, for the reason that the instruction to
them should not have been given; contributory negligence,
because of chapter 135, Laws of 1910, being no longer a
bar to a recovery in this class of cases.

It follows from the foregoing views that as to appellant
Thomas, the engineer, the judgment of the court below
must be reversed and the cause remanded, and it is so
ordered; but as to the railroad company and its conduct-
or, Weir, the judgment must be and is affirmed.

*Reversed and Remanded.*
*Affirmed.*