## VIRGINIAN RY. CO. v. EARLY.
### No. 4945.

Circuit Court of Appeals, Fourth Circuit.

Aug. 12, 1942.

John R. Pendleton, of Princeton, W. Va., and Walter C. Plunkett, of Norfolk, Va., for appellant.

Walter G. Burton, of Princeton, W. Va., and Joseph M. Sanders, of Bluefield, W. Va., for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit against the Virginian Railway Company for damages for the death of Everett W. Early under the Federal Employers' Liability Act, 45 U.S.C.A. § 59, turns primarily on the question whether the deceased at the time of the accident, which is said to have caused his death, was acting within the scope of his employment. The facts in this respect are not in dispute. Early was a machinist in the employ of the railroad's shops at Elmore, Virginia, which was 34 miles distant from his home at Princeton, Virginia. As was his custom, he came to work on March 8, 1940, the day of the accident, in the automobile of a friend. After parking the car on a railroad lot beside a small stream, the men walked across a railroad bridge and into the shops without entering the railroad yard, arriving at the shops at least 20 minutes before 7 A. M. when they were due to begin work. It was quite usual for Early upon arrival in the morning and before going to work to leave the shops and go to the boarding house and lunchroom of Sands & Co. for a cup of coffee. He did so on the morning of the accident. The lunchroom was located in a building belonging to the Railway Company beside the tracks, about one-fourth of a mile distant from the shops. It could be reached from the shops by using the tracks or the paths along side the tracks in the railroad yard or from the highway by crossing a bridge over the Guyandot River and then using the tracks or the paths; but in either case, it was necessary to cross the tracks in the yard.

By arrangement with the Railway Company Sands & Co. operated a boarding house and restaurant for the benefit and convenience of the employees who were accustomed to use the railroad yard in going to and from the place. The employees were not obliged to deal with Sands & Co. but when they did so, the indebtedness incurred was deducted from their wages under an assignment and paid direct to it by the Railway Company. There can be no doubt that with the knowledge and approval of the Railway Company the establishment was conducted for the convenience of its employees who made up nearly all of the customers. Moreover, it is clear that for a long time the employees of the Railway Company, with its knowledge and approval, constantly made use of the railroad yard in passing back and forth

between the railroad shops and the lunch-room. The company did not object to the use of the tracks for this purpose, although it had a rule forbidding employees to walk on the tracks except in the performance of duty.

It was during Early's return from the lunchroom about ten minutes before 7 on March 8 that the accident occurred which is said to have caused the injury that resulted in his death. When he reached a point about 200 feet from the machine shops, a fireman in the company's employ opened the blow-off valve of an engine running on a nearby track and Early was forcibly struck by the escaping water and steam. The fireman testified that before opening the valve, he looked to see if any one was in a position to be hit by the escape and seeing no one, proceeded with his task. But there was nothing to prevent him from seeing Early as he approached, and the jury might reasonably have inferred from the evidence as a whole that the accident would not have happened if the fireman had used due care to prevent it. The evidence tended to show that Early was knocked down by the force of the blow and that he rolled over a rail out of the path of the engine. He then went on to the shop where he angrily complained of the fireman's conduct, changed his wet street clothes, checked in and went to work. He made no complaint at the time of any pain from the accident. However, when he reached home that evening he complained of pain in his left thigh and his wife found a reddish blue place on his left thigh about the size of her hand, and on that and following days she rubbed it with liniment. Later he told the doctors who attended him that he had fallen over a rail and hurt his thigh. He continued to work until the 16th of March complaining, meanwhile, of his leg. The doctor was called in on March 16 and found him running a high temperature and noticed a place on the left thigh like a bruise at least a week old. Later Early developed an abscess at this point on his leg and was taken to the hospital where the abscess was opened and drained. He did not do well and although he subsequently left the hospital, it was later necessary to reopen the abscess. Finally on May 22 he died as a result, in the doctor's opinion, of a blood stream infection and empyema brought on by the abscess. Such an abscess, in the opinion of the physician, could have resulted from such a fall.

Upon this state of facts the District Judge instructed the jury that at the time of the accident, Early was acting in the capacity of an employee of the Railway Company and was entitled to the benefits of the Federal Employers' Liability Act. The defendant objected on the ground that at the time Early was not engaged in the duties of his employment but was at best only a licensee using the railroad premises for his own convenience, because he voluntarily left his place of work after he reached it by a safe and direct route and went to another part of the railroad property for a purpose disconnected with his duties. On this theory the defendant prayed for a directed verdict or at least a submission of the question to the jury. But these requests were refused by the judge who regarded the question as one of law on undisputed facts and decided it in the plaintiff's favor. In order to sustain this ruling, it is not sufficient to find that the plaintiff was a licensee entitled to the exercise of that degree of care on the part of the Railway Company which is outlined in the opinion of this court filed this date in Holcombe v. Buckland and Doss, 4 Cir., 130 F.2d 544. The instant case was tried under the provisions of the Federal statute which are applicable only where the relationship of employer and employee exists.

It is conceded that the scope of employment includes not only actual service, but also those things necessarily incident thereto, such as going to and from the place of employment on the employer's premises. Erie R. R. Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057, Ann. Cas.1918B, 662; Chicago, M., St. P. & P. R. Co. v. Kane, 9 Cir., 33 F.2d 866; Atlantic Coast Line R. Co. v. Williams, 5 Cir., 284 F. 262; Easter v. Virginian Ry. Co., 76 W.Va. 383, 86 S.E. 37; Kinney v. Baltimore & O. Em. Rel. Ass'n, 35 W.Va. 385, 14 S.E. 8, 15 L.R.A. 142. It is also well established that a temporary stoppage of work for purposes which are necessarily incident to the life of an employee does not put an end to the relationship of employer and employee, since such an occurrence must have been within the contemplation of the parties. This rule has been applied to such ordinary circumstances as resting temporarily, procuring drinking water, eating lunch on the premises, &c. North Carolina R. R. Co. v. Zachary, 232 U.S. 248, 260, 34 S.Ct. 305, 58 L.Ed. 591,

Ann.Cas.1914C, 159; Chicago, M., St. P. & P. R. Co. v. Kane, 9 Cir., 33 F.2d 866; 35 Am.Jur., Master & Servant, § 172 and cases cited. In North Carolina R. R. Co. v. Zachary, supra, one of the questions raised was whether a fireman was acting within the scope of his employment at the time he was killed on the railroad in view of the fact that after inspecting and preparing his engine for starting on a trip, he attempted to cross the railroad tracks in order to go to his boarding house which was located a short distance away. The court said (232 U.S. page 260, 34 S.Ct. page 309, 58 L.Ed. 591, Ann.Cas.1914C, 159): "Again, it is said that because deceased had left his engine and was going to his boarding-house, he was engaged upon a personal errand, and not upon the carrier's business. Assuming (what is not clear) that the evidence fairly tended to indicate the boarding house as his destination, it nevertheless also appears that deceased was shortly to depart upon his run, having just prepared his engine for the purpose, and that he had not gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine. See Missouri, Kansas & Texas Ry. Co. v. United States, 231 U.S. 112, 119, 34 S.Ct. 26, 58 L.Ed. 144."

We think that these decisions manifest a clearer understanding of the actual conditions of employment than those which seem to hold the strict view that any temporary departure from the performance of duty suspends for the time being the relationship of employer and employee, even though it constitutes no interference with the work in hand and is not objectionable to the employer; for example, Ellsworth v. Metheney, 6 Cir., 104 F. 119, 51 L.R.A. 389; Pioneer Mining & Mfg. Co. v. Talley, 152 Ala. 162, 43 So. 800, 12 L.R.A., N.S., 861; Illinois Central R. Co. v. Archer, 113 Miss. 158, 74 So. 135; see also, Krysiak v. Pennsylvania R. Co., 3 Cir., 270 F. 758; Young v. New York, N. H. & H. R. Co., 2 Cir., 79 F.2d 844.

In our view, the case at bar falls within the class of cases described in the decisions first above cited. Early's visit to the lunchroom before going to work was as clearly incidental to his employment as a visit during his lunch hour would have been. Moreover, it can be truly said that he was on his way to work when the accident occurred; for if, instead of passing through the shop on his way to the lunchroom, he had crossed the bridge over the river and visited the lunchroom first and had then come to the shop through the yard, there could have been no dispute that he was hurt while he was on his way to work and making use of the company's property in a proper fashion. No sound legal distinction can be based on the difference between these alternatives. There was no error in this ruling of the court.

The defendant also complains of a portion of the judge's charge that related to the causal connection between the accident and the death of the deceased. Between March 8, when the accident occurred, and March 16, when Early's condition became so acute that a physician was called in, he was in an automobile accident. On the morning of March 12 the automobile in which he and his companions were driving to work skidded on an icy road and struck another car. Early was on the rear seat at the right when the right side of the car came into collision, bending back the fender and denting the top over the window by which Early was sitting. He received a small bruise on his head and complained of being hurt and strained in the groin when the three men along side him crowded over on him as the cars came into contact. The car did not overturn but was quickly stopped and the party drove on to Elmore, a distance of 15 miles, and back to Princeton that night without repairs.

In connection with this phase of the case the defendant offered as expert witnesses two physicians who had not attended the deceased in his last illness. They testified that in their opinion the abscess from which Early died was more likely to have been caused by the automobile accident than by the accident in the railroad yard. This opinion was given in answer to a hypothetical question which stressed Early's failure to complain of pain immediately after the accident in the railroad yard, and his complaint that he was hurt in the groin after the accident in the automobile; but when on cross examination the testimony of the wife as to Early's suffering from the spot on his hip on the evening of March 8 was added to the question, the experts admitted

that the opinion they had expressed could not stand. This testimony, therefore, added nothing of value in support of the defendant's contention.

The defendant argues, nevertheless, that the intervening automobile accident left the question of the proximate cause of Early's death in the realm of speculation and conjecture, since the automobile accident might have caused the abscess on his left thigh that led to his death; and that the judge's charge in effect withdrew this possibility from the consideration of the jury. We do not think so. The judge told the jury that the plaintiff had no case unless they should find that Early had been knocked down by the escaping steam from the engine so as to suffer a bruise on his hip. The judge referred in this connection to the fact that after the accident on March 8 Early did not limp or complain of being hurt; and to the evidence of the automobile collision, and the jury were told that they should give due consideration to this evidence since they had taken an oath to decide the case on the law and the evidence and should not be influenced by sympathy growing out of the fact that the plaintiff was the widow of a deceased employee and the defendant was a railroad corporation.

■ It was in this setting that the judge used the words complained of when he told the jury that if they should find that Early was in fact knocked down and bruised on his hip on March 8, they could almost stop there, because the testimony was practically uncontradicted that he died from an abscess caused by a bruise on his hip; and, therefore, if they believed the wife's testimony as to his condition on his return from work on the evening of March 8, the resulting chain of events was convincing. But the jury was again cautioned in this portion of the charge to bear in mind that they were the sole judges of the facts and they were not bound by any opinion expressed or thought to be held by the court with reference to the facts. In all of this there was no error, but only the proper exercise of the function of the judge in a federal trial court to charge the jury on the facts as well as on the law.

Affirmed.