Mary S. **LAFFERTY**

v.

**PENNSYLVANIA RAILROAD COMPANY.**

Civ. No. 11130.

United States District Court, E. D. Pennsylvania.

Oct. 5, 1954.

Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., for plaintiff.

Philip Price, Robert M. Landis, Theodore Voorhees, Arthur E. Newbold, 3rd (of Barnes, Dechert, Price, Myers & Rhoads), Philadelphia, Pa., for defendant.

FOLLMER, District Judge.

Plaintiff instituted this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., alleging that she was an employee of defendant and on December 6, 1949, at about 8:30 o'clock a. m., sustained injuries by reason of an assault by her supervisor. Defendant having raised the question of jurisdiction, the Court, as provided in Rule 42(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., directed a separate preliminary hearing on this issue. Testimony was taken upon this jurisdictional feature only and the following facts were developed.

Plaintiff was an employee of the Pennsylvania Railroad Company on the "extra list" subject to assignment to duty in the

Information-Reservation Bureau of the Railroad. She was also certified by the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes (hereafter designated the "Union") as a member of the Protective Committee of Lodge No. 100, on the Philadelphia Terminal Division to represent the employees coming under the agreement entered into by and between the Pennsylvania Railroad Company and the Clerical (and certain other) Employes of the Pennsylvania Railroad Company represented by the Union.

Rule 5–C–1 of the Master Agreement entered into by and between the Railroad and the Clerical (and certain other) Employes represented by the Union provided:

"Where extra employes are used extra boards will be established by agreement between the Management and the Division Chairman. The number of extra employes to be used and the manner in which they will work will be determined by written agreement between the Management and the Division Chairman."

Rule 5–D–1(a) provided:

"Employes will, upon request, be given necessary leave of absence to engage in work pertaining to their representing organization, without impairment of seniority."

The Extra List Agreement (Agreement No. 7) of February 26, 1948, provided:

"An extra list of employes will be maintained to protect work accruing to Group One employes, Clerks, located at the Information-Reservation Bureau, 30th Street Station, Philadelphia, Pa.",

and after providing for the number of employees to be carried on the list, the order of seniority, etc., further provided:

"4. Employes holding positions on this list shall contact headquarters between the hours of 2.30 P.M. and 4.00 P.M. each day to receive their assignments.

"Those who stand for work and who have telephones, failing to contact headquarters for assignments. between 2.30 P.M. and 4.00 P.M., effort shall be made to contact them between 4.00 P.M. and 5.00 P.M. for the purpose of giving them their assignments. Telephone numbers listed by employe for calling purposes, must be in the employe's residence. No other numbers shall be accepted. Employes who do not have telephones must contact headquarters between 2.30 P.M. and 4.00 P.M. each day, to receive their assignments. If they fail to do so, they forfeit their turn and revert to the bottom of the list.

\* \* \* \* \* \*

"All employes on list are subject to call and must make themselves available for assignment at all times."

The Extra List Agreement (Agreement No. 7) covering the Clerical employees (Group One of the Master Agreement) at the Information-Reservation Bureau, 30th Street Station, was modified on June 1, 1949, by an additional clause as follows:

"The provisions of this Extra List Agreement shall not be construed as requiring or permitting the Company to call any employee for service at times or under circumstances which would involve violation of any federal or State Law or regulation."

Rule G–9 of the Regulations of the Department of Labor and Industry of the Commonwealth of Pennsylvania Governing the Hours Provisions of the Women's Law provided:

"When necessary to change shifts in order to avoid undue hardship, employers may establish schedules of work for female employes which provide, on the day of the change, not less than twelve hours of rest between tours of duty."

Plaintiff was assigned from the Extra List Board to duty in the Information-Reservation Bureau on December 5, 1949,

for a period from 4:00 p. m. to 12:30 a. m. Her work consisted of dispensing pullman space and information to the public. About sixty per cent. of the making of pullman reservations and fifty per cent. of dispensing information had reference to interstate movement of trains.

Plaintiff claims that during this tour of duty she was requested by a Miss Delaney to act as her Union representative at a conference set for the morning of December 6, 1949, in connection with an alleged infraction by Miss Delaney, that she believed Miss Delaney was being charged with some major offense and that a statement would be taken and that Miss Delaney might be held out of service. A right to hold out of service and a remedy for erroneous holding out was provided in the Master Agreement. A statement taken in the absence of a requested representative would have been a violation of the Master Agreement and trial on any such charges would have required advance written notice. The pertinent provisions of the Master Agreement are as follows:

"6–A–1. (b) When a major offense has been committed an employe suspected by the Management to be guilty thereof may, after the occurrence of the offense, be held out of service pending trial and decision."

"6–B–1. An employe who is required to make a statement prior to the trial in connection with any matter which may eventuate in the application of discipline to any employe, if he desires to be represented, may be accompanied by the 'duly accredited representative,' as that term is defined in this Agreement. A copy of his statement, if reduced to writing and signed by him, shall be furnished him by the Management upon his request."

"6–C–1. (a) An employe who is accused of an offense and who is directed to report for a trial therefor, will be given reasonable advance notice in writing of the exact charge for which he is to be tried and the time and place of the trial.

"(b) If he desires to be represented at such trial, he may be accompanied by the 'duly accredited representative' as that term is defined in this Agreement. The accused employe or the 'duly accredited representative' shall be permitted to question witnesses insofar as the interests of the accused employe are concerned. Such employe shall make his own arrangements for the presence of the said representative and no expense incident thereto will be borne by the Company."

"7–A–1. (d) When an employe is held out of service in connection with a major offense pending trial and decision, and the decision exonerates the employe so held out of service, the employe will be compensated for the difference between the amount earned while out of service or while otherwise employed and the amount he would have earned had he not been held out of service."

Plaintiff did not inquire whether there was any intention on the part of Management to do any of those things which would have constituted a violation of the Master Agreement, but merely assumed so. The calling of a conference with Miss Delaney was quite consistent with the indicated intention of Management of determining whether the situation constituted a major offense in connection with which Miss Delaney should be held out of service pending formal hearing. This Management had a right to do.

It had been the practice of Management at that time to compensate a Union representative for time lost by reason of attendance at special meetings called by the Management and for time lost during working hours due to attendance at meetings with Management representatives for the purpose of handling grievances or claims arising under the Master Agreement covering the class or craft represented by the organization involved,

but no compensation was paid to a Union representative who appeared on behalf of an employee without a request by Management and when not on a tour of duty.

The plaintiff appeared at about 8:30 a. m. on December 6, 1949, solely as a Union representative on Union business to attempt to represent Miss Delaney, unrequested by Management and when not on a tour of duty. She had completed her assignment at 12:30 in the early morning of December 6, 1949, and had not been assigned to any other duty, nor could she have been so assigned for a period of twelve hours from the termination at 12:30 a. m. of her previous tour of duty. She was not working and her appearance bore no relation to her work. She was there at the time the alleged injury occurred in a purely representative capacity on behalf of the Union. Plaintiff admitted that she did not, and did not expect to, get paid.

Plaintiff contends that persons on the Extra List are on duty twenty-four hours a day. The Extra List Agreement provided a specific time for employees to call in and a specific time thereafter for Management to call employees. This is not a situation such as is involved in those cases where an employee is on duty but the injury occurs while resting temporarily, procuring drinking water, eating lunch or living on the premises, or while going to or from work.[1] Neither is this a situation where an employee is required to remain at a specific place during the period involved and, consequently, "engaged to wait".[2] On the contrary, the present situation, under the Extra List Agreement here involved, is clearly that of an employee "waiting to be engaged"[3] and consequently not on duty. Her activities were not part of her work for the Railroad, nor necessary to its performance but was an activity undertaken for a private purpose,[4] and in the instant case with the added factor that plaintiff could not have been employed for the twelve hour period following her tour of duty which ended at 12:30 that morning.

It follows, therefore, both as a fact and as a conclusion of law that plaintiff at the time of the alleged injury was not on her employer's premises as a necessary incident to discharge of the duties of her employment within the contemplation of the Federal Employers' Liability Act. Consequently, plaintiff has no right of action under the Federal Employers' Liability Act. This Court is without jurisdiction of the action and the complaint must accordingly be dismissed.

1. Virginian Ry. Co. v. Early, 4 Cir., 130 F.2d 548; Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F.2d 15.

2. Dumas v. King, 8 Cir., 157 F.2d 463, 466.

3. Dumas v. King, supra; Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90.

4. Mostyn v. Delaware, L. & W. R. Co., supra; Sassaman v. Pennsylvania R. Co., 3 Cir., 144 F.2d 950.