John W. MARTIN, as Trustee for Florida East Coast Railway Company,

v.

Fred L. BLACK.

No. 15189.

United States Court of Appeals Fifth Circuit.

April 27, 1955.

William C. Steel, Miami, Fla., Anderson, Scott, McCarthy & Preston, Miami, Fla., Russell L. Frink, Jacksonville, Fla., Robert H. Anderson, Miami, Fla., of counsel, for appellant.

Warren C. Rose, Henry R. Carr, Miami, Fla., for appellee.

Before TUTTLE, Circuit Judge, and DAWKINS and SIMPSON, District Judges.

DAWKINS, District Judge.

Appellee, plaintiff below, brought this suit under the Federal Employers' Liability Law, 45 U.S.C.A. § 51, for damages alleged to have been caused by the negligence of appellant. There was verdict and judgment for appellee, and appellant assigns errors: (1) that at the time of his injury, appellee was not engaged in interstate commerce; and (2) the evidence was insufficient to support a verdict in his favor.

Under the first point appellant contends that appellee was not engaged in interstate commerce at the time of his injury because, instead of using a bridge with handrails across a ditch, or bar pit, provided for that purpose, he had constructed and used a makeshift bridge or crossway having no such safeguards and that failing to use the means the company provided for reaching and departing from his place of employment as a bridge tender, he was no longer in such commerce when injured. Under the second point appellant contends that the evidence was insufficient to show negligence on its part and appellee's injuries were due

solely to his own negligence, citing cases in support of these contentions.

The lower court refused to direct a verdict for defendant and the issues involved are mainly questions of fact, which are: did appellant approve or acquiesce in the use of the crossing where the injury occurred, in a manner to require that it furnish lights and a handrail at the crossing? That it was necessary for appellee, in reaching and leaving the railroad bridge where he was employed, to cross the ditch, is admitted. It was also conceded that appellant furnished a reasonably safe means for that purpose some 100 feet further away from the railroad bridge. There was evidence tending to show that although the crossing used was constructed by appellee with the help of other bridge tenders by the use of "timbers temporarily laid aside by a bridge gang", he also testified that he obtained permission from the assistant supervisor of bridges and buildings, one Norris, to use them in constructing the crossing involved. This was denied by Norris. Further, there was testimony that these timbers were taken up and used by a bridge gang for a day but were replaced, which was corroborated by the gang foreman who could not say whether this was before or after the accident, but admitted they were put back in substantially the same position as when removed. The latter also admitted that when they were replaced, wooden supports were placed under the abutting ends to level up the walkway. The foreman further stated this was done without authority of anyone over him. After the crossway was thus restored, steps leading down to it were constructed, but again the foreman in charge testified this was also done without authority. There was a level pathway along the embankment from the railroad bridge to the point where this crossing "had been provided"; the appellee customarily brought his automobile to a point near the crossing involved and used it in going to and from his work at the bridge. Other employees used the crossing at times, and appellee swore he had requested one Phillips, "a telegraph and signal maintenance man," to provide lights at this crossing. The latter admitted this request but stated he advised appellee to get authority therefor from the proper authorities. Norris, the supervisor, denied that any request was ever made to have lights installed or that he knew the little bridge was being used by appellee and others.

In describing how the accident happened, appellee testified: "I was working for the F.E.C. Railroad and I was walking a bridge I built and it was dark and the night being black and the timbers black the bridge was built out of I couldn't see and I wasn't going at high speed; I was kind of feeling my way along; and I stepped off."

On April 21, 1954, the day after the trial was completed and the verdict rendered, appellant moved to amend his answer so as to include the defense of assumed risk. The motion was denied and no point is made of this as an alleged error. Exceptions were taken to the instructions, directed principally to the refusal to charge that the appellee had failed to prove he was working in interstate commerce or that appellant was negligent. The court did charge the jury that they could consider any contributory negligence in determining the amount of recovery. Without going into detail, it is sufficient to say that the general charge covered the case fully and correctly.

Appellant does not dispute that while actually performing his duties, appellee and his employer were in interstate commerce, the contention here being that by failing to use the safer bridge provided by appellant, appellee had departed from that status and gone on his own, so to speak. It would serve little purpose to engage in further discussion of the case for, on thorough examination of the record, we have determined there was substantial evidence from which the jury could conclude that the crossing was constructed and used with the knowledge and apparent acquiescence of appellant. This being true, it became an alternative

means provided for appellee's reaching and leaving the bridge where he was employed. Virginian Ry. Co. v. Early, 4 Cir., 130 F.2d 548, and authorities cited therein.

We find that there was evidence to support the verdict and there was no error otherwise. Accordingly, the judgment appealed from is

Affirmed.