WATERFORD LUMBER CO. *v.* JACOBS.

Division B. July 2, 1923. Suggestion of Error Overruled July 21, 1923.

[97. South. 187. No. 22641.]

1. MASTER AND SERVANT. *Scope of employment question for jury.*

In a suit for damages for personal injuries, the question whether the injured person was acting in the course of his employment

is for the jury, where the evidence is conflicting, or where a difference of opinion may reasonably be entertained with regard to the proper inference to be drawn from the testimony, otherwise that question is decided as one of law by the court.

2. TRIAL. *Peremptory instruction on unsupported count of negligence held improperly refused.*

Where a declaration in a suit for damages for personal injuries charges different acts of negligence in separate counts, one of which bases the right of recovery upon the negligence of the defendant in failing to furnish the plaintiff a reasonably safe place in which to work, it is error to refuse an instruction to the jury that they cannot find for the plaintiff on the ground that the defendant failed to furnish the plaintiff a reasonably safe place in which to perform his work, where there is no evidence to support such a finding, but, under the evidence, a recovery, if any, must be based upon the negligence of the defendant in failing to furnish reasonably safe tools and appliances or instrumentalities.

3. ACTION. *"Defense" to cause of action defined.*

A defense to a cause of action is any fact or state of facts which will defeat it in whole or in part, or, in other words, any matter which tends to diminish the amount of recovery or to entirely defeat the cause of action.

4. NEGLIGENCE. *Instruction on contributory negligence held erroneous as precluding diminution of damages.*

In a suit for personal injuries, contributory negligence is a partial defense, and it bars the right of the plaintiff to recover for the proportion of the damages which is attributable to his own negligence, and an instruction that the contributory negligence of the plaintiff was no defense in the case was erroneous, since such an instruction precludes the jury from diminishing damages "in proportion to the amount of negligence attributable to the person injured," as provided by chapter 135, Laws 1910 (section 502, Hemingway's Code).

APPEAL from circuit court of Wayne county.

HON. J. D. FATHEREE, Judge.

Action by J. E. Jacobs against the Waterford Lumber Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

*Stevens & Heidelberg* and *Ambrecht, Hand & Meredith.* for appellant.

I. The proof shows that at the time the plaintiff was injured he had abandoned his employment and had undertaken to perform a duty which was without the scope of his employment, and that in the doing of this act he became and was a mere volunteer and that the master, under the circumstances, owed him no duty other than not to wilfully or wantonly injure him. *Gulfport and Mississippi Coast Traction Co.* v. *Faulk,* 118 Miss. 894, 80 So. 340; *Whitton* v. *South Carolina & G. Railroad Company,* 106 Ga. 796, 32 S. E. 857; *Central of Georgia Railway* v. *McWhorter,* 115 Ga. 476, 42 S. E. 82; Labatt's Master and Servant. sections 1561, 1565, and 1566; *Mandel* v. *Wheeler,* 59 Ill. App. 459. This doctrine has been upheld in practically every state of the Union. See *Fowler* v. *Brooks,* 65 Kan. 861; *Ellsworth* v. *Methenay,* 104 Fed. 44; *Southern Ry. Co.* v. *Guyton,* 25 So. 34; *Boyds* v. *Blumenthal,* 52 A. 330, 3 Pennewill 564; *Punkowski* v. *Newcastle Leather Company,* 57 A. 599, 4 Pennewill 544; *Allen* v. *Hixson,* 36 S. E. 810, 111 Ga. 460; *Cleveland, etc. Ry. Co.* v. *Carr,* 95 Ill. App. 576; Bowling Green 1. Capshaw, 64 S. W. 507, 23 Ky. Law. Rep. 945; *Louisville & Nashville Railroad Company* v. *Hocker,* 111 Ky. 707, 64 S. W. 638, 23 Ky. Law Rep. 982, 65 S. W. 119; 23 Ky. Law Rep. 1174; *Mitchell Tranter Co.* v. *Ehmett,* 65 S. W. 835, 53 Ky. Law Rep. 1788, 55 L. R. A. 710; *Stagg* v. *Edward Weston Tea & Spice Co.,* 169 Mo. 489, 69 S. W. 391; *Duval* v. *Armour Packing Co.,* 95 S. W. 978, 119 Mo. App. 150; *Pfeffer* v. *Stein,* 50 N. Y. S. 516; *Durst* v. *Bronley Brothers Carpet Company,* 57 A. 986, 208 Pa. 573.

II. The plaintiff, by the form of pleadings selected by him, saw fit to have issue joined in this case on the four distinct elements of negligence, which he charged in the various counts of his declaration as being the proximate

cause of his injury. The defendant was called upon to meet that issue and that issue only, and was entitled to have the jury told, as a matter of law, in so far as that case was concerned, that the plaintiff could not recover because of a failure on the part of the defendant to furnish an engine since the plaintiff had not sued because of failure to furnish an engine.

III. It was error to instruct the jury that "if you believe that the plaintiff was guilty of contributory negligence, still, under the law this shall be no defense in this case, if your further believe from the evidence that the defendant was guilty of negligence which proximately contributed to plaintiff's injury." This instruction does not say that contributory negligence will not bar a recovery, and, had the instruction said that it would not bar recovery, it would have been eminently correct, but the instruction says that it shall not be a defense in the case. As a matter of fact, contributory negligence is a defense. It is a defense to the extent that it will bar the right of the plaintiff to recover for the proportion of the damages which is attributable to his own negligence. It is a partial defense, and yet the instruction in this case tells the jury that it is no defense whatever.

The supreme court of North Dakota, in *Scott et al.* v. *The District Court of the Fifth Judicial District for Barnes County, et al.,* 107 N. W. 61, defines the word "defense" as follows: "A defense is any fact or state of facts which will defeat in whole or in part a cause of action." *Baier* v. *Hempall,* 16 Nebr. 127, 20 N. W. Rep. 108; *Bush* v. *Prosser,* 11 N. Y. 347; *Foland* v. *Johnson* (N. Y.), 16 Abb. Prac. 235, 239; *Utah & N. Ry. Co.* v. *Crawford,* 1 Idaho, 770-773; *McKyring* v. *Burr,* 16 N. Y. 297, 69 Am. Dec. 696; *Wehle* v. *Butler,* 43 How. Pr. (N. Y.) 5, 15; *Illinois Central Railroad Company* v. *Archer,* 113 Miss. 158, 74 So. 135, is in no way in conflict with our views, with reference to this instruction. The court in *Mississippi Central Railroad Company* v. *Lott,* 118 Miss. 816, 80 So. 277, ap-

proved an instruction which told the jury that contributory negligence is no longer an absolute defense, where the instruction went on further and told the jury the effect of contributory negligence, and told the jury that the plaintiff's damages should be diminished in proportion to the amount of negligence attributable to him, but this is far different from the case at bar.

IV. When the plaintiff himself was on the witness stand, he was asked whether he would be willing for the physicians who examined and treated him, after the accident, for his injuries, to come before the jury and tell what they knew about the case. The court refused to permit him to answer this question even out of the hearing of the jury. We were entitled to have the question answered by the witness. It was not the lawyer's privilege to permit these physicians to testify or not to testify as they saw fit. It was the privilege of the plaintiff himself. The purpose of section 3695 of the Code of 1906, which makes all communications to a physician or a surgeon privileged and which prevents their disclosure thereof, except at the instance of the patient, is for the protection of the patient himself. In this case, the plaintiff had already exhibited his injuries to the jury. He had told the jury about them and the extent of them, and, even after this question was asked, he introduced two physicians and proved by them the nature and extent of his injuries. See *W. O. W.* v. *Farmer,* 77 So. 655; *McCall* v. *Turner,* 88 So. (Miss.) 705.

V. Even if it be conceded for the sake of argument that the defendant was negligent in all of the particulars claimed in the declaration, still, the proof in this case shows that these alleged acts of negligence were not the proximate causes nor the contributing causes to the man's injury, but that his injury was due solely to the improper method selected by him of loading the car and of stopping the car. If an independent, intervening cause is respon-

sible for the injury, then, the master is not liable, even though prior thereto he might have been guilty of negligence. This is true even though the independent, intervening cause may not have been negligence on the part of the servants. *Minor* v. *King,* 72 Miss. 12, 16 So. 245; *Rook* v. *A. & V. Railroad Company,* 28 So. 821, 78 Miss. 97; *Cumberland Telephone & Telegraph Co.* v. *Woodham,* 54 So. 890; *Illinois Central Railroad Company* v. *Wooley,* 28 So. 26; *Billingsley* v. *Illinois Central Railroad Company,* 56 So. 791.

*H. Cassedy Holden, Martin V. B. Miller,* and *A. G. Busby,* for appellee.

I. SCOPE OF EMPLOYMENT. Appellant contends that appellee was not acting within the scope of his employment at the time he was injured; that his duties were strictly supervisory in loading the lumber on the car; that in performing manual labor in moving and stopping the car he went beyond the limit of his duties as foreman, or boss of the job. Plaintiff added his physical strength to theirs; he himself took in hand that part of the work which required the most skill and intelligence—the chocking of the car. Not only did he have a right to do these things; he was compelled, by the exigencies of the task, to do them. His manual and expert services were indispensable. The scope of a servant's employment is to be defined by what he was employed to perform, and by what, with the knowledge and approval of the master, he did perform, rather than by mere verbal designation of his position. *Rummell* v. *Dillworth,* 111 Pa. 343, 2 Atl. 355; 18 R. C. L., 580, par. 86; *Stone* v. *Boscawen Mills* (N. H.), 52 Atl. 119; *Sanders* v. *Houston & L. C. R. Co.* (Tex.), 93 S. W. 139; *Union Pacific R. Co.* v. *Brerton,* 218 F. 593, 134 C. C. C. 321; *Harvey* v. *T. & P. R. Company,* 166 F. 385, 92 C. C. A. 237. Affirmed 57 L. Ed. 852; *L. N. R. Co.* v. *Chamblee* (Ala.), 54 So. 681; *Southern Marble Company* v. *Faucett* (Ga.), 86 S. E. 1092; *Hitchcock* v.

*Artic Creamery Company* (Iowa), 150 N. W. 727; *Stoney-fork Coal Company* v. *Lingar* (Ky.), 153 S. W. 6; *Dagis* v. *Walworth Mfg. Co.* (Mass.), (L. 3 N. E. 620.); *Yongue* v. *St. Louis & S. F. R. Co.* (Mo.), 112 S. W. 985; *Nelson* v. *Northern Pacific R. Co.* (Mont.), 140 Pac. 388; *Martin* v. *New Jersey St. R. Co.* (N. J.), 80 Atl. 477; *Blackburn* v. *Cherokee Lumber Co.,* (N. C.) 67 S. E. 915; *Dixon* v. *Chiquola Mfg. Co.* (S. C.), 68 S. E. 643; *Missouri, K. & T. R. Co.* v. *Balliat* (Tex.), 107 S. W. 906; *Warren* v. *Townley Mfg. Co.* (Mo.), 155 S. W. 850; *Magee* v. *Mississippi Central R. Co.,* 95 Miss. 678, 48 So. 723; *Belzoni Hardwood Lumber Company* v. *Langford,* 89 So. 919. See also *Sea Food Co.* v. *Alves,* 117 Miss. 1, 77 So. 857. The case of *Gulfport & Mississippi Coast Traction Co.* v. *Faulk,* 118 Miss. 894, 80 So. 340, relied upon by the appellant, in this connection, is entirely different from the case at bar.

II. CONTRIBUTORY NEGLIGENCE. It is insisted that it was error to advise the jury that contributory negligence was "no defense" in the case. But the defense of contributory negligence as a bar to recovery has been abolishd in this state. Hemingway's Code, sections 502 and 503 annotated; Hemingway's Code Supplement of 1921, sections 502 and 503; *Cumberland Tel. Co.* v. *Cosnahan,* 105 Miss. 615, 62 So. 824; *Lindsey Wagon Co.* v. *Nix,* 108 Miss. 814, 67 So. 459; *Illinois Central R. Co.* v. *Thomas,* 109 Miss. 539, 69 So. 773; *Illinois Central R. Co.* v. *Archer,* 113 Miss. 158, 74 So. 135; *Sea Food Co.* v. *Alves,* 117 Miss. 1, 77 So. 857; *Miss. Central R. Co.* v. *Lott,* 118 Miss. 816, 80 So. 277; *Gulf & Ship Island R. Co.* v. *Boone,* 120 Miss. 632, 82 So. 335.

III. TESTIMONY OF PHYSICIANS. The appellant complains that the court erred in refusing to permit the plaintiff to answer as to whether or not he objected to the testimony of certain physicians whom he called in after the injuries; and further erred in excluding the evidence of these same physicians. The plaintiff claimed his privi-

leg under section 6380, Hemingway's Code, but it is contended that he waived his right by introducing two of the physicians whom he consulted. The plaintiff had a right to claim his privilege as to Dr. Lomax and Dr. Rush. He did not waive this privilege by introducing two other physicians, nor by exhibiting his body to the jury. Cases directly in point are: *Hamel* v. *Southern Ry. Co.* (Miss.), 74 So. 276; *U. S. F. & G.* v. *Hood* (Miss.), 87 So. 115; *Davis* v. *Elzy* (Miss.), 88 So. 630.

Argued orally by *C. C. Hand* and *R. W. Heidelberg* for appellant and *H. C. Holden* and *M. V. B. Miller* for appellee.

COOK, J., delivered the opinion of the court.

This action is by J. E. Jacobs against the Waterford Lumber Company, appellant, for damages for personal injuries alleged to have been sustained by him while in the employ of the appellant lumber company, and, from a judgment in favor of the plaintiff for ten thousand dollars the lumber company prosecuted this appeal.

The declaration is in four counts, and each count charged that the appellee was an employee of the appellant, Waterford Lumber Company, in the capacity of woods foreman, and that it was a part of his duty to superintend the work of logging appellant's mill and the loading of lumber cut by various portable sawmills of appellant, which were located along its lines of railroad. Each count charged that at a time when the appellee was superintending the loading of a carload of lumber, the lumber fell off the car and on the appellee, and caused certain personal injuries therein described. The first count charged:

"That the proximate cause of plaintiff's injuries was the negligence of defendant in failing and refusing to furnish nails of sufficient size and strength, and nails that had not been damaged, and stanchion cuffs and bolts to fasten same on said cars, and with which to securely and properly fasten the stanchions of the defendant com-

pany to its log car, which was then and there being loaded with lumber by the plaintiff."

The second count charged: "That the proximate cause of plaintiff's injuries was the negligence of the defendant company in failing to furnish a car suitable and reasonably safe, on which to load the lumber of the defendant company, at the places, in the manner, and in the quantities, and under the conditions that plaintiff was required to load same by the defendant company."

The third count charged: "That the proximate cause of plaintiff's injuries was the negligence of the defendant company in failing to furnish plaintiff a reasonably safe place in which to work."

The fourth count charged: "That the proximate cause of the plaintiff's injuries was the failure of the defendant company to furnish plaintiff a car that was reasonably safe and suitable for the purpose of loading the lumber of the defendant company in the quantity, at the places, and in the manner that plaintiff was required to load said lumber on said car by defendant company."

The facts in this record, in so far as they are material to the decision of this case, are substantially as follows: The main sawmill of the appellant was located on the main line of the Mobile & Ohio Railroad, and it owned and operated a logging railroad of several miles length over which it transported the logs that were to be sawed into lumber at this mill. In addition thereto, it owned a portable sawmill, located in the woods, at which some lumber was manufactured, and this lumber was then hauled, under the supervision and direction of the appellee, to the logging railroad, at a point thereon where there was a spur or side track of several hundred feet in length, and it was there piled alongside of this side track to be afterwards loaded on log cars of the appellant, for the purpose of being transported to the main mill about six miles away, where it was unloaded and put through the mill and trimmed, and thereafter stacked on the yard.

The testimony offered on behalf of the appellee showed

that at the time of his injury the appellee was, and had been for a period of three years prior thereto, employed by the appellant in the capacity of woods foreman or woods superintendent, and that it was his business under his employment to supervise and superintend the operations of appellant in the woods, including the loading of logs, the loading of lumber, the handling of the teams, and the general supervision of the employees of appellant engaged in its operations in the woods. The testimony on behalf of appellee was to the effect that the side track where the injury occurred was on a grade, but the extent of the grade was not fixed with any degree of certainty by appellee's witness. Several witnesses for the defendant testified that the grade was slight. The proof further showed that the log cars in use on his railroad were skeleton log cars; that these cars were not equipped with brakes nor were they floored; that they were constructed with two sets of trucks, and running lengthwise across the car were heavy timbers, and attached to these timbers were heavy crosswise timbers called bolsters or bumpers; that these bumpers were 12x12 inches and were ten feet long, and one was attached at each end of the car. The appellee's testimony further showed that there were no stanchion cuffs on the ends of these bumpers, but that the method which was used for putting stanchions on the cars was to nail 2x4-inch scantlings to the ends of these bolsters or bumpers, and on the occasion when this injury occurred, there had been nailed on one side of the car two of these stanchions, one being nailed to each bumper; that the nails which the appellant had furnished for use in nailing on these stanchions were twelve and twenty penny nails, and that these nails were not large enough to securely fasten these stanchions on the ends of the bumpers. There was also testimony for the appellee to the effect that these bumpers had had nails driven into them on numerous occasions, and that the bumpers had become nail pitted and, to some extent, decayed; that appellee had demanded of appellant that larger nails be

furnished, but it had failed to do so; that appellee had demanded of the appellant that it furnished him with an engine for the purpose of spotting the cars or moving them when they had to be moved, but it was admitted that no request for an engine to spot this particular car was made. The testimony further showed that the appellee, whose duty it was to supervise the loading of the car, was not present when the stanchions were nailed on the car; that he did not see the nails that were used, and did not inspect the stanchions after they were nailed on to see whether they had been securely fastened; that he did not require four stanchions to be nailed on, as might have been and usually was done, for the reason he did not think it was necessary and gave the matter no attention.

Appellees' testimony further showed that on the occasion when he was hurt he was directed by the superintendent of the mill to load a car with lumber three inches by eight inches by sixteen feet long, and to load thereon approximately six thousand feet; that this lumber was located along the side of the spur track at various points; that he had some eight or ten employees of appellant under his control and supervision, and he used these employees for the purpose of loading the lumber on the occasion in question; that, after loading all of the required dimensions out of the first pile, he moved the car down to the next pile, variously estimated as being from twenty-five to fifty feet from the first pile; that he loaded all the lumber in the first pile on one side of the car and against the two stanchions; that the lumber was loaded in this way instead of being evenly loaded across the bed of the car, for the reason that it was more convenient to do so; that after this quantity of lumber had been loaded on one side of the car, he attempted to move the car to another pile, and the method which he adopted for moving the car was to have the employees under his supervision push the car along; that when it reached the point where he desired it to be stopped, one of the men under his supervision used a pine knot as a chock, placing the

pine knot on the rail in front of the front wheel on the
left hand side of the car, and on the opposite side from
the one on which the lumber had already been loaded,
and the appellee himself attempted to chock the car by
placing a 2x4 scantling on the rail in front of the front
wheel on the side of the car that was already loaded; that
the employee on the left side of the car placed his chock
first and, on account of the fact that there was no load
on that side, the wheel mounted the chock, thereby tilting
the car and throwing the weight of the lumber against
the two stanchions nailed on the right; that on account
of this added weight, caused by the tilting of the car, the
stanchion broke just at the moment that appellee was
placing his chock, thus precipitating the load of lumber
onto appellee and severely injuring him. The proof fur-
ther showed that one of the appellees used a brake on one
of the rear wheels by placing a piece of lumber over the
top of the wheel and under the bolster; that the same
thing could have been done on the other rear wheel, but
appellee did not direct it to be done, and there was tes-
timony to the effect that the only safe way to chock a
car was to take a piece of lumber or timber and lay it
across the track, at the point where it was desired to stop
the car, letting the piece of lumber extend across both
rails, so that both wheels would strike at the same time.

The first assignment of error that is pressed by the ap-
pellant is that the proof shows that at the time the ap-
pellee was injured he had abandoned his employment and
had undertaken to perform a duty which was without
the scope of his employment, and that in the doing of this
act he became and was a mere volunteer, and that the
master, under the circumstances, owed him no duty, other
than not to willfully or wantonly injure him.

In determining whether an employee was acting within
the scope of his employment at the time he was injured,
the surrounding circumstances of each case must be con-
sidered. In the case at bar the appellee was charged with
the duty of moving a heavy, partially loaded car down

a grade; the exact percentage of the grade being somewhat in conflict. The exact number of men under his direction and control at the time is not clear from the testimony, while the number that would be necessary to safely move and stop the car must be determined from the conditions existing at the time. The testimony shows that some of the men under appellee's control were inexperienced in loading lumber and moving a loaded car by hand power and chocks, and under all the facts in evidence here we think there was no error in submitting to the jury for decision the question of whether or not the appellee was acting within the scope of his authority when he undertook to assist in moving and stopping the car. The inference that the appellee was confronted with an emergency which made it necessary for him to assist in the work might reasonably be drawn from the testimony.

"The question whether the injured person was acting in the course of his employment is for the jury, where the evidence is conflicting, or where a difference of opinion may reasonably be entertained with regard to the proper inference to be drawn from the testimony, otherwise that question is decided as one of law by the court." Labatt's Master and Servant, section 1566; 18 R. C. L., par. 86, p. 582.

The second ground for removal urged by appellant is based upon the refusal of an instruction by the jury that they could not find for the plaintiff because of the failure of the defendant to furnish the plaintiff with an engine for the purpose of spotting the car in question.

We have hereinbefore set out the specific acts of negligence relied upon by appellee in the several counts of his declaration, and in no count was it alleged that the failure of the appellant to furnish an engine proximately caused or contributed to appellee's injury, and since there was testimony admitted to show that appellant failed to furnish an engine, and that it was necessary for the safety of the employees that an engine be furnished for the purpose of spotting cars, we think this instruction should

have been granted. We would not reverse for this error alone, however, in view of other general instructions as to the effect of this testimony, which were granted.

Appellant next assigns as error the refusal of an instruction peremptorily instructing the jury to find for appellant upon the third count of the declaration, and also an instruction reading as follows:

"The court instructs the jury that they cannot find for the plaintiff, on the ground that the defendant failed to furnish the plaintiff a reasonably safe place in which to perform his work."

These instructions should have been given. There was no evidence offered to warrant the submission of the case to the jury on this count of the declaration, and no evidence to support a finding by the jury that the appellant failed to furnish the appellee a reasonably safe place in which to work. Under the evidence in this record the appellee's recovery, if any, must be based upon a failure to furnish reasonably safe tools and appliances or instrumentalities.

Appellant next assigns as error an instruction granted to appellee which reads as follows:

"The court instructs the jury for the plaintiff that if you believe that the plaintiff was guilty of contributory negligence, still, under the law this shall be no defense in this case, if you further believe from the evidence that the defendant was guilty of negligence which proximately contributed to plaintiff's injury."

It was error to grant this instruction. Sections 502 and 503, Hemingway's Code, provide that:

"In all actions hereafter brought for personal injuries or where such injuries have resulted in death, the fact that the person injured may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured," and "all questions of negligence and contributory negligence shall be for the jury to determine."

It will be noted that the instruction does not say that contributory negligence will not bar a recovery, but that it is no defense in the case. Contributory negligence is a partial defense, and it bars the right of a plaintiff to recover for the proportion of the damages which is attributable to his own negligence. A defense to a cause of action is any fact or state of facts which will defeat it in whole or in part, or, in other words, any matter which tends to diminish the amount of recovery or to entirely defeat the cause of action. In the case of *Illinois Cent. R. Co.* v. *Archer,* 113 Miss. 158, 74 So. 135, it was held that an instruction which told the jury that, although the plaintiff was guilty of such conduct as proximately contributed to his injury, yet this was no bar to finding for the plaintiff, was not error, for the reason that it did not preclude the jury from diminishing the damages in proportion to the amount of negligence attributable to the plaintiff. The instruction in the case at bar does preclude the jury from so diminishing the damages, and it was error to grant it.

Since the case must be reversed for the errors herein indicated, we do not deem it necessary to now discuss the other errors assigned.

*Reversed and remanded.*