## CHICAGO, SOUTH SHORE AND SOUTH BEND RAILROAD COMPANY *v.* PACHECO.

[No. 14,310. Filed May 10, 1932.]

*Ralph N. Smith, Ben C. Rees* and *Russell W. Smith,* for appellant.

*Lemuel Darrow, Earl Rowley, C. V. Shields* and *Moore, Long, Chudom & Johnson,* for appellee.

LOCKYEAR, J.—The appellant operates an electric railway from Michigan City, Indiana, west through Gary to Chicago, Illinois. The appellee was an employee of the appellant but had severed his connection with his employer. On April 16, 1928, he had come to the depot of appellant in Gary for the purpose of taking a train to Michigan City, Indiana, to secure wages due him from appellant. He had been provided with two workmen's passes, one for the trip to and one for the trip from Michigan City. Instead of getting on an east-bound train going to Michigan City, he got on the west-bound train going to Chicago.

The complaint in this action charges that the conductor of the appellant's train pushed the appellee off the train, while the same was in rapid motion, thereby severely injuring him, for which he prayed damages.

The complaint is in two paragraphs, the first paragraph alleges that the appellee is a Mexican and unable to speak, read or write the English language; that he boarded the train in good faith and that, after the train had left the station, an agent, servant and employee of the appellant came through the train collecting tickets

from the passengers; appellee presented his passes to said agent, who became angry, and wrongfully, maliciously and unlawfully, in a rude, insolent and angry manner, threw and pushed this appellee off said train, while it was moving, throwing him onto the bed of the railroad track which was covered with stone and cinders, without stopping the train or slacking the speed thereof, thereby severely injuring the appellee.

The second paragraph of the complaint alleges that the appellee was injured by reason of appellant's negligence as follows: The appellee presented the said servant and employee of appellant with his passes which said agent returned to appellee; that said agent and employee motioned for plaintiff to come out in the vestibule of said car on which appellee was riding, that said appellant company, through its agent and employees, carelessly and negligently left the trap door in the vestibule of said car open; that said agent and employee, knowing said doors were open, carelessly and negligently beckoned this plaintiff to come to said platform; that while appellee was on said platform, said train was going at a rapid rate of speed, the exact speed of which is not known by this appellee, and which appellee is unable to estimate; that, while appellee was standing on the platform in the aforesaid vestibule, where he had been so negligently called by the agent and employee of the appellant, and where said doors had been negligently left open by the appellant, he was carelessly and negligently hurled, pushed, thrown and tipped from said train; that he fell on the hard cinder surface of the road bed; that, in said fall, he was permanently, painfully and severely injured, for which he prayed damages.

The appellant filed separate answers in general denial to each paragraph of complaint.

The cause was submitted to a jury for trial. At the

close of all the evidence, the appellant moved the court and filed a written motion therefor to direct a verdict for the appellant upon the second paragraph of complaint, which motion was by the court overruled; to which ruling of the court, the appellant at the time excepted.

The jury returned a verdict in favor of the appellee for $2,000, for which amount judgment was rendered.

The only evidence introduced by the appellee to prove how he happened to get off the train was his own testimony, and is, in substance, as follows: That he got on a car of the train and that he sat down in a seat four or five seats from the door; that the conductor came to him and asked him for his tickets; that the conductor punched his tickets, and returned them to the appellee; that the conductor then motioned to him to come out where he was standing alongside of the door; that at the time the car was traveling very rapidly and had gone about seven or eight blocks from the station; that the door near which the conductor was standing was open and that it was the door leading to the outside of the car. "He talked to me about three minutes."

The testimony was taken through an interpreter and can best be understood by setting out the questions and answers.

The witness then testified as follows: "Q. What did the conductor do then, if anything? A. He pushed me out.

"Q. Describe to the jury how he pushed you out. A. He pushed me out and the car was running.

"Q. At the time he pushed you, were you up in the car or on the steps? A. I was on the car.

"Q. Before the conductor pushed you, tell the jury if he said anything to you? A. Yes, he did, but I did not understand what he did say.

"Q. And how long did he talk to you before he pushed you? A. About three minutes.

"Q. Describe the manner of the conductor's language with reference to being loud or not. A. It was loud.

"Q. And describe the appearance of the conductor as he talked to you just before he pushed you out of the car. A. He talked to me as though he was mad.

"Q. How close to the door were you when the conductor pushed you? A. I was a little ways back from the door.

"Q. What happened to you when he pushed you? A. I did not know what happened right afterward, I was unconscious until quite a while after.

"Q. All right, now at this time refresh your recollection, Mr. Witness. Do you remember whether you were on the first car of the train or another car of the train? A. About the middle of the train—the middle car.

"Q. Now, Mr. Pacheco, look at those two men; which one if either one of those two men was it that came to get your ticket? A. I don't remember now, that is so long ago that I do not remember the features of the person."

The conductor of the train testified that he never saw the appellant.

Harold Dimmick testified that it was the duty of the collector and flagman to protect the rear end of the train, that that was a part of his duties during April of 1928. He further testified that he did not recall the incident of this accident that occurred to this appellee, but that he was notified of it at a later date. He further testified that, on the morning of April 16, 1928, he was employed by the South Shore Railway as a collector and flagman and that the train left Gary that morning at 7 o'clock; that there were three cars in said train and that his position was on the rear car; that the train

was made up at Gary and that their destination was Chicago; that said train was a local train and that it makes all local stops; that, when he got on the train that morning, he was in charge of the third or last car and that he found on this car a passenger who handed him some passes similar to those which had been marked Plaintiff's Exhibits 3 and 4. That this man who handed him these passes was seated in the front end of this rear coach on the north side of the car; that, in the front end of this car, there was no smoking compartment and there were no toilet facilities between the place where the appellee was sitting and the entrance of the car. He then testified as follows: "I started through collecting fares and came upon a man that had a gang pass—of some foreign birth. And as far as I can remember, that particular morning there was a man on the train going in the wrong direction, going to Michigan City, and we were headed for Chicago. And I started—or informed the man he was on the wrong train and gave him his pass back and told him to get off at the next flag stop and catch the train back to Michigan City. And went on collecting my fares." He testified that he never punched the tickets given to the man, and that his punch hole as shown was not the same as the one shown in the exhibit.

Mrs. Florence Tenny Muhs testified that she is a resident of Gary, Indiana, and that she is a public school teacher in the schools of Chicago, Illinois; that she has been teaching for more than eight years; that, in going back and forth to school, she traveled on the South Shore Railway. That she remembered of a man jumping off a train some time during the month of April, 1928, and that she was on the train that morning; that the conductor on the train that morning was a man by the name of Harold; that she did not know his last

name. She then identified the gentleman that was the collector of the tickets on that train; that she boarded this train about 10 minutes to 7 and that the train is made up in Gary and that there were three cars in this train. She further testified that she was on the rear coach of the train and that she sat down in the first seat of the rear coach on the left hand side towards the front; that she observed this gentleman collecting the tickets on the particular morning. She further testified that she was there in a position facing the vestibule and did not see him (meaning the collector) or anybody else push anybody off the train that morning.

On motion of appellee's counsel, the court struck out the answer.

The witness was asked the question: "Did you see the conductor push anybody off the train?" The appellee's counsel objected to the question.

The appellant made an offer to prove that the witness would testify that she did not see the conductor or collector of the tickets push anybody off the train that morning; the court sustained the objection and the appellant duly excepted to the ruling.

The appellant filed a motion for a new trial, assigning as reasons therefor the overruling of the motion to direct a verdict for appellant on the second paragraph of complaint and the errors in regard to the refusal to allow the witness Mrs. Muhs to testify as above set out.

The court overruled the motion for a new trial, to which ruling, the appellant excepted and assigns the same as error in this appeal.

The appellant contends that the appellee's evidence goes only to the first paragraph of the complaint, viz., wilful injury, while the second paragraph is predicated upon the negligence and no evidence was introduced to support that paragraph, therefore, the motion to direct

a verdict on said second paragraph of complaint should have been sustained.

In regard to the offered testimony of Mrs. Muhs: This presents to us a consideration of the subject of positive and negative evidence. Where a witness testifies that he saw or heard a fact, that is positive evidence; but where another witness testifies that he was present but did not see or hear what is supposed to have occurred is often regarded as negative testimony. Nevertheless testimony of a witness that he did not see or hear something which he would have seen or heard had it occurred has been regarded as positive testimony. *United States* v. *Baltimore, etc., R. Co.,* (1900), 170 Fed. 456; *Wiar* v. *Wabash R. Co.* (1913), 162 Iowa 702, 89 N. E. 622, 133 Am. St. 311; *Lonis* v. *Lake Shore, etc., R. Co.* (1897), 111 Mich. 458, 69 N. W. 642. In the case of *Cleveland, etc., R. Co.* v. *Wuest* (1908), 41 Ind. App. 210, 83 N. E. 620, this court held it to be erroneous to instruct a jury where some witnesses testified that they had heard the bell of a locomotive and others had testified that they had not heard it; that positive testimony that certain signals were heard is of greater weight than mere negative testimony that signals were not heard, citing *Ohio, etc., R. Co.* v. *Buck* (1892), 130 Ind. 300, 30 N. E. 19; *Cleveland, etc., R. Co.* v. *Schneider* (1907), 40 Ind. App. 524, 82 N. E. 538. Here we have a witness who was at a place where, according to some of the evidence, the man was alleged to have been pushed off the train. She could have seen it if it had occurred. In the first place, she testified that she did not see it. The court struck that testimony from the record. Following this ruling, she was then asked the question, "Did you see the conductor push anybody off the train?" Objection was made and there was a proper offer to prove what the witness would

testify. The court sustained the objection. We are of the opinion that the court erred in both instances.

While it is not in the province of this court to weigh the evidence, nevertheless, when we come to consider errors committed in the admission of exclusion of evidence, we would hesitate to set aside a verdict of a jury in a case where there was an abundance of evidence to support a verdict even though certain evidence was improperly excluded. But, in this case, the appellee is not supported by any other positive testimony than his own testimony. The testimony of the man who took up tickets is in direct conflict with the testimony of the appellee. He testified that the punch hole in the ticket was not made by his punch and that there would be no reason for punching a ticket not taken up by him. He testified that he was not at the place where the appellee claims to have been pushed off the train and knew nothing as to how the accident occurred.

Where the evidence is so evenly balanced as in this case, we are of the opinion that the exclusion of the testimony of the witness, Mrs. Muhs, constitutes reversible error.

There was no evidence to support the allegations of the second paragraph of complaint, and the motion of the appellant requesting the court to direct a verdict for the appellant should have been sustained. *Rhodius* v. *Johnson* (1900), 24 Ind. App. 401, 56 N. E. 942; *United States, etc., Ins. Co.* v. *Batt* (1912), 49 Ind. App. 277, at p. 281, 97 N. E. 195; *Portsmouth St. R. Co.* v. *Peeds, Admr.* (1904), 102 Va. 662, 47 S. E. 850; *Louisville, etc., R. Co.* v. *Davis* (1890), 91 Ala. 487, 8 So. 552; *Jarrett* v. *Ellis* (1923), 193 Ind. 687, 141 N. E. 627; *Erie R. Co.* v. *Gallagher* (1918), 255 Fed. 814; *Feitl* v. *Chicago City R. Co.* (1904), 211 Ill. 279, 71 N. E. 991; *Russell* v. *John Clemens & Co.*

(1923), 196 Iowa 1121, 195 N. W. 1009; *Waterford Lumber Co.* v. *Jacobs* (1923), 132 Miss. 638, 97 So. 187; *Higgins* v. *Medart Patent Pulley Co.* (1922), 240 S. W. (Mo.) 252.

The judgment is reversed, with instructions to grant appellant's motion for a new trial.